The Honorable Lauren King

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

                     Plaintiff,

   v.

SCOTT KINLEY,

                   Defendant.

Case No. 22-CR-00145-LK

DEFENDANT SCOTT KINLEY'S
SENTENCING MEMORANDUM

I.    **INTRODUCTION**

Defendant Scott Kinley appears before the Court for sentencing after pleading guilty to violating the Lacey Act—Illegal Sale of Fish Possessed in Violation of Tribal Law, under 16 U.S.C. § 3372(a)(1) and 3373(d)(1)(B). Mr. Kinley is a 53 year-old indigenous family man with no prior criminal history. Mr. Kinley overcame the trauma of his own childhood and became an integral member of his tribal community, where he is well-regarded for his kindness and generosity. Mr. Kinley and his wife have three daughters who came into their lives through the foster system. Mr. Kinley is deeply remorseful for his conduct, unlawfully selling tribal subsistence salmon. As a proud member of the Lummi Nation, Mr. Kinley understands the cultural significance and importance of this resource for tribal subsistence and ceremonial purposes. He deeply regrets having abused his subsistence fishing rights and the impact his decision to do so has had on his wife and daughters.

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

As set forth below, Mr. Kinley joins in the sentencing recommendation of the United States Probation and Pretrial Services Office. We respectfully submit that the recommended sentence of three years probation and restitution is a just punishment under the circumstances of this case.

## II.   BACKGROUND

A.   Personal History

Scott Kinley was born and raised near the Lummi Reservation in Whatcom, County. His childhood was far from ideal. Scott's parents divorced when he was four years old. His mother and stepfather lived in poverty and abused alcohol to the point that they would often leave Scott and his siblings home alone all night while they were out drinking. Beginning at age five, an acquaintance of the family sexually abused Scott whenever he was left home alone. This abuse and neglect continued until Scott's mother sent him to live with his grandparents three years later in North Carolina, where he remained for four years.

Scott's home-life was traumatic and unstable throughout his childhood. His closest male relatives and putative role models were alcoholics. Scott also witnessed his mother struggle with mental health issues and domestic violence at the hands of his stepfather, whose drinking fueled his abusive behavior. Scott recalls hearing his mother screaming and begging at night for Scott's stepfather to stop hitting her. Scott was shuffled back and forth among relatives in Florida, North Carolina, and Washington and continued to live with poverty and instability for years—at one point sharing a one-bedroom home with six people—before he finally turned 18 and became independent. As an adult, Scott has struggled with anxiety and depression. Scott even attempted suicide in 1997 during a low point in his life before he met his wife, Keri.

B.   Family and Community

Despite his troubled upbringing, Scott was determined to do better for his family. He married his wife Keri Kinley in 2005. Scott and Keri recently separated but remain on very

DEFENDANT'S SENTENCING MEMORANDUM - 2
Case No. 22-CR-00145-LK

good terms. Together, Scott and Keri have three daughters who came into their lives through the foster care system, and a two year-old granddaughter.  Victoria and Sasha are biological sisters who Scott and Keri began fostering at ages 10 and 12.  While Victoria and Sasha are adults now, they are still close with Scott and Keri, and they both continue to support the girls in adulthood. This includes providing support for Victoria's two year-old daughter, Hope, who Scott and Keri consider their granddaughter.  Letters from Keri Kinley, Victoria Lane, and Sasha Lane are attached as Exhibits A through C hereto.

Scott and Keri began fostering their daughter Serenity on her first birthday, and after several years, they were able to legally adopt her.  Serenity is now 11 years old.  She struggles with sensory issues and learning disabilities resulting from exposure to certain substances in utero.  Scott and Keri and have worked hard to provide Serenity a loving supportive home environment that meets her special needs, and she has made tremendous progress under their care.

Scott also set an example for his daughters through his involvement in the community and tribal charities.  Scott has a reputation for giving food or money to anyone who needs it. He once went so far as to donate a large van to an elderly couple who were raising their grandchildren and could not afford a vehicle large enough to fit all of the children.  For years, Scott contributed donations of toys, clothing, and food to Sche'lang'en Village, a transformational housing and social service program on the Lummi Reservation that helps low-income families recover from homelessness or substance abuse, and assists parents in reuniting with children placed in the foster care system.   A letter from John Plummer, PhD of Sche'Lang'en Village is attached as Exhibit D hereto.  From 2013 to 2019, the years during which he operated a seafood processing business, Scott regularly made large donations of fish to the Lummi Food Bank and other tribal charities—he would donate as much as 3,000 pounds of fresh seafood at a time.  A letter from Elaine Lane of the Lummi Food Bank and Councilman Henry M. Cagey are attached as Exhibits E and F hereto.  Scott also volunteered for the Lummi

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1  Boys & Girls Club, planning fundraising events and serving as the auctioneer.

2          C.        <u>Operation of Native American Fisheries</u>

3         Until recently, Scott was a small business owner.  One of Scott's companies was Native

4  American Fisheries, Inc., a seafood processing plant registered with the American Indian Food

5  Program, administered by the by the Intertribal Agricultural Council, and funded through the

6  USDA Foreign Agricultural Service to promote tribal products and businesses.  Scott operated

7  Native American Fisheries from 2013 to 2019.  During this time, Scott bought whole fish, which

8  he processed and sold.  Scott also made it his practice to regularly donate significant portions

9  of the whole fish he purchased and processed to tribal charities, including Sche'lang'en Village

10  and the Lummi Food Bank.

11         Prior to this offense, all purchases Scott made for Native American Fisheries were

12  legitimate and lawful.  Scott became aware of a "Native to Native" fishery on the Columbia

13  River in spring of 2018.  He traveled to the fishing site in May 2018, which was managed by

14  the four tribes of the Columbia River Inter-Tribal Fish Commission (CRITFC).  Scott purchased

15  early spring Chinook salmon that had already been harvested by tribal fisherman and that under

16  Yakama tribal law was to be used for subsistence and ceremonial purposes only.  As with his

17  lawfully procured fish purchases in the past, Scott donated 854 pounds of this subsistence

18  salmon to a charity serving Lummi tribal elders.  A letter from Connie Martin of Little Bear

19  Creek, Lummi Nation Senior Program is attached as Exhibit G hereto.  Scott sold approximately

20  7,158 pounds of the subsistence salmon to a seafood market in Seattle, Washington, and a

21  seafood broker in Vancouver, B.C.  Scott closed down Native American Fisheries in 2019 after

22  he became aware of his investigation.  He is no longer self-employed and works as a used car

23  salesman in Mesa, Arizona.  Keri continues to rely on Scott's income to support Serenity.

24                       **III.**     **ACCEPTANCE OF RESPONSIBILITY**

25         Scott has cooperated with the government and accepts full responsibility for committing

26  this crime.  Scott had no criminal history and he deeply regrets abusing subsistence and

DEFENDANT'S SENTENCING MEMORANDUM - 4
Case No. 22-CR-00145-LK

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

ceremonial fishing rights in violation of tribal and federal law. Scott also regrets the impact his actions will have on his family. A statement from Scott accepting responsibility is attached as Exhibit H hereto.

## IV. SENTENCING RECOMMENDATION

### A. Recommendation of U.S. Probation and Pretrial Services

The United States Probation and Pretrial Services Office has recommended a sentence of three years probation, no fine, a special assessment of $100, and restitution as determined by the Court. We agree that the recommended sentence is appropriate to meet the statutory purposes of sentencing set forth in 18 U.S.C. §3553(a). In particular, a sentence of probation without incarceration is appropriate for a first-time offender with Scott's "history and characteristics." *See* 18 U.S.C. §3553(a)(1); *see also United States v. Whitehead*, 532 F.3d 991, 993 (9th Cir. 2008) (district court properly sentenced defendant to probation, community service, and restitution despite a Guidelines range of 41 to 51 months incarceration where defendant accepted responsibility, had an eight-year-old daughter who depended on him, and committed a crime that was less dangerous than most offenses). Moreover, Scott's sentence is likely to include an order of restitution to be determined by the Court, and "the goal of obtaining restitution for victims of [an[ offense . . . is better served by a non-incarcerated and employed defendant." *United States v. Menyweather*, 447 F.3d 625, 634 (9th Cir. 2006).

### B. Applicable Sentencing Guidelines

As the Court is aware, the U.S. Sentencing Guidelines are not mandatory because they may result in a sentence based on facts not proven beyond a reasonable doubt to a jury, in violation of the Sixth Amendment. *See United States v. Booker*, 543 U.S. 220 (2005). They are only "one factor among several courts must consider in determining an appropriate

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

sentence." *Kimbrough v. United States*, 552 U.S. 85, 90 (2007). . The following levels under the Guidelines are applicable to this offense: [1]

| Guideline | Level |
|---|---|
| §2Q2.1—base offense level | +6 |
| §2Q2.1(b)(1)(A)—pecuniary gain | +2 |
| §2Q2.1(b)(3)(A)(ii), and §2B1.1(b)(1)(E)—market value exceeds $95,000 but less than $150,000 | +8 (Probation Office) or +6 (Defendant) |
| §3E1.1(a) and §3E1.1(b)—acceptance of responsibility and cooperation | -3 |
| §5H1.6,Note B—loss of caretaking | -2 |
| **Total Offense Level** | **11 (Probation Office) or 9 (Defendant)—both Zone B offenses** |

The parties could not reach agreement on the market value of the unlawfully sold subsistence fish as it pertains to determination of the level to apply under USSG §2Q2.1(b)(3)(A)(ii), and §2B1.1(b)(1)(E).  The above chart incorporates two different levels for market value: (1) the level applied by U.S. Probation and Pretrial Services, which assumes a market value determination greater than $95,000 but less than $150,000, and (2) the level advocated for by Mr. Kinley, which assumes a market value determination greater than $40,000 but less than $95,000.[2]

Market value is unique in this case because the fish sold by Mr. Kinley were harvested under the Yakama Nation Fisheries Code §32.19.03, which allowed the fish purchased by Mr. Kinley to be harvested only for ceremonial or subsistence purposes. There are no circumstances

---

[1] If the Court agrees with the total offense level of 13 proposed by the U.S. Probation and Pretrial Services Office and applies a further downward departure of two levels pursuant to §5H1.6, Note B for loss of caretaking, *see* Section IV(C) *supra* , a sentence with a term of probation is further warranted by §5C1.1(c)(2)-(3).

[2] Both calculations result in a Zone B offense under the Guidelines if the Court agrees to apply the requested downward departures for acceptance of responsibility under §3E1.1(a) and §3E1.1(b) and loss of caretaking under §5H1.6, Note B.

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

under which fish harvested for subsistence purposes could have been sold by the victims in this case, the four tribes comprising CRITFC, at a market value of greater than $150,000.  Under §2Q2.1(b)(3)(A)(ii) if the market value of fish exceeds $6,500, the offense level increases by the number of levels set forth in §2B1.1. Note 4 to §2Q2.1 states:

> When information is reasonably available, "market value" under subsection (b)(3)(A) shall be based on the fair-market retail price. Where the fair-market retail price is difficult to ascertain, the court may make a reasonable estimate using any reliable information, such as the reasonable replacement or restitution cost or the acquisition and preservation (e.g., taxidermy) cost. Market value, however, shall not be based on measurement of aesthetic loss (so called "contingent valuation" methods).

Here, the fish were harvested and sold in a subsistence fishery site by members of the Yakama Nation to Mr. Kinley, a member of the Lummi Nation. Notably, these fish were not caught at Mr. Kinley's behest—the fish had already been caught when Mr. Kinley purchased it.[3]  Mr. Kinley paid these tribal fisherman roughly $5/lb. and resold some of the fish—that which he did not consume or donate—for approximately $12/lb. By contrast, it is Mr. Kinley's understanding that the government contends that market value under the Guidelines should be a retail market value $19.99/lb. The issue remains that there is no "fair-market retail price" for subsistence fish because tribal members can harvest subsistence fish for free under Yakama Nation Fisheries Code §32.19.03 but not sell it. Thus, the fair-market retail price is "difficult to ascertain," §2Q2.1 n.4, with respect to subsistence fish, and the replacement cost to CRITFC (e.g., the $5/lb. paid to tribal fisherman to harvest the subsistence fish) or restitution (Mr.

---

[3] The United States Probation and Pretrial Services Office states at page three of its November 28, 2022 Sentencing Recommendation that Mr. Kinley "took enough fish to shut down early ceremonial tribal fishing for the season." An undated victim impact statement from the Yakama Nation shares this sentiment.  While Mr. Kinley has accepted full responsibility for his actions and continues to express real remorse for his actions, it is important to note that Mr. Kinley purchased only fish that had already been harvested by tribal fishermen without Mr. Kinley's participation or direction.  It is therefore unreasonable to conclude that Mr. Kinley personally impacted the length of the season when the same volume of fish would have been harvested by those fisherman regardless of how much of the total catch was purchased by Mr. Kinley.

DEFENDANT'S SENTENCING MEMORANDUM - 7
Case No. 22-CR-00145-LK

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

Kinley's disgorged profit from selling the subsistence fish) is a better measure of market value in this case than retail price under §2Q2.1(b)(3)(A)(ii).

This interpretation is in accord with Note 3 to §2B1.1, which construes the meaning of "loss" as actual or intended pecuniary harm—excluding non-economic harms. §2B1.1 n.3(A)(i)–(iv). Under §2B1.1, the loss calculation should therefore reflect the market in which the victim would have sold or replaced the goods, or here, the subsistence fish. *See United States v. Hardy*, 289 F.3d 608, 613–15 (9th Cir. 2002) (trial court erred by applying retail price instead of wholesale price under §2B1.1 when the victim was a wholesaler).  Mr. Kinley therefore respectfully submits that the proper market value under §2Q2.1(b)(3)(A)(ii) and §2B1.1 is his profits of $48,223.90 as a proxy for replacement value.  This would mean an increase of 6 rather than 8 levels under the Guidelines, and a total offense level of 9, inclusive of downward departures for acceptance of responsibility under §3E1.1(a) and §3E1.1(b) and loss of caretaking under §5H1.6, Note B as set forth in the following subsection.[4]

C.     Loss of Caretaking

Mr. Kinley's family relies on him as a caretaker and provider.  Following their separation, Mr. Kinley's wife Keri has re-entered the workforce after many years of primarily serving as the family's homemaker.  Mr. Kinley has always been and will likely continue to be the primary earner for his family given the difficulty stay-at-home parents face re-entering the workforce with little vocational training.  This is particularly important for the Kinleys because their daughter, Serenity, is only 11 years-old and will continue to rely on Scott and Keri to provide her a safe and stable home until she becomes an adult. Mr. Kinley can better provide

---

[4] Even if the court adopts the retail market price of $19.99/lb. advocated for by the government during plea negotiations, the total market value or loss under the Guidelines would be below $150,000. The parties stipulated that Mr. Kinley sold approximately 7,158 lbs. of subsistence fish, totaling $143,088.42 applying the government's liberal retail market price of $19.99/lb. *See* Plea Agreement at 8(o), ECF # 6.

DEFENDANT'S SENTENCING MEMORANDUM - 8
Case No. 22-CR-00145-LK

for Serenity's care if he remains un-incarcerated and able to work.   Mr. Kinley therefore respectfully requests a downward departure of two levels under §5H1.6, Note B.

      D.   <u>Restitution</u>

Under the Mandatory Victims Restitution Act of 1996, 18 U.S.C. § 3663A ("MVRA"), restitution is intended to "fully compensate victims for their losses, and to restore victims to their original state prior to the criminal act. *United States v. Kaplan*, 839 F.3d 795, 800 (9th Cir. 2016). However, "it would be an abuse of discretion for a district court to issue a restitution award that makes a victim more than whole, such as by awarding a windfall." *Id.* at 802. Restitution in this case must therefore take into account the unique nature of the subsistence salmon unlawfully sold by Mr. Kinley and its actual value to the victim, here CRITFC. The fish sold by Mr. Kinley were harvested under the Yakama Nation Fisheries Code §32.19.03, which allowed the fish purchased by Mr. Kinley to be harvested only for ceremonial or subsistence purposes. There are no circumstances under which the CRITFC could legally have sold and received the street market value of the fish sold by Mr. Kinley. Thus, retail market value is an improper measure of restitution to make CRITFC whole.  We respectfully submit that disgorgement of Mr. Kinley's profit of $48,223.90 is the proper measure of restitution, and anything greater than disgorgement would amount to a windfall in excess of what is permitted under the MVRA.  *See id.*

The government appears to have adopted this view in the case of Simon Lee Sampson, another indigenous defendant accused of selling subsistence fish and game for commercial purposes in violation of Yakama Tribal Law and the Lacey Act.  *See U.S. vs. Simon Lee Sampson*, Case No. 1:18-cr-02029-SAB, ECF No. 93 (4/24/2019). Sampson admitted to unlawfully selling sturgeon, steelhead, salmon, and deer to an undercover officer on multiple occasions. Sampson believed the undercover officer was a meat and seafood company representative. He used a group of four other men, usually members of his family, to hunt and fish, while Sampson transacted the sales. Sampson was sentenced to 4 years of probation and

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

restitution. Notably, Sampson's restitution did not contemplate the loss to the Yakama Nation. Instead, his restitution solely recompensed the state and federal government for the cost of their undercover investigations. That amount was equivalent to Sampson's profits from the illegal sales.  The same principle should apply in Mr. Kinley's case. Moreover, in the event that the Court orders disgorgement as the measure of restitution, Mr. Kinley has arranged to borrow enough money to remit his profit of $48,223.90 immediately after his sentencing.

## V.    CONCLUSION

Mr. Kinley respectfully joins in the sentencing recommendation of the United States Probation and Pretrial Services Office and asks the Court to impose a sentence of three years probation and forgo imposition of a fine.  Mr. Kinley further requests that, given the unique nature of the unlawfully sold subsistence salmon, this Court set restitution at the amount of Mr. Kinley's profits, $48,223.90.


DATED this 7th day of December, 2022.


K&L Gates LLP


By: s/ Michael D. McKay
    Michael D. McKay, WSBA # 7040
    Ashley E.M. Gammell, WSBA # 50123

925 Fourth Avenue
Suite 2900
Seattle, Washington  98104-1158
Tel: 206-623-7580
Fax: 206-623-7022
Email: mike.mckay@klgates.com
Email: ashley.gammell@klgates.com

Attorneys for Defendant Scott Kinley

DEFENDANT'S SENTENCING MEMORANDUM - 10
Case No. 22-CR-00145-LK

EXHIBIT A

The Honorable Lauren King
United States Courthouse
700 Stewart Street, Suite 15134
Seattle, WA 98101-9906

November 29, 2022

Dear Judge King,

   My name is Keri Kinley, I am Scott Kinley's wife of 17 years and I have known him for 25 years.  I want to tell you who he is.  He is a father of 3 girls and we have a 2 year-old granddaughter.  All 3 girls started out as foster girls but from day one he has been dad.  We got our 11 year old daughter, Serenity, on her first birthday and we have been lucky enough to be able to adopt her and have a great relationship with her biological parents.  Six months after we got her, I got a phone call that there were two sisters needing a home.  When I called Scott about them, all I said was "2 girls need" and he cut me off and said say yes and they have been our daughters ever since.  The only complaint the girls have ever had about him is that he works too much and is never home.  He basically works 7 days a week most of the time and if he is not working, he is helping someone.

   He is the hardest working person I know and never says no to helping someone.  Even if he just over hears someone say they need help, he will help if he can or find someone who can help them.  It was normal for Scott to call me and ask if the girls had any clothes that did not fit anymore or toys they did not play with anymore that he could give to someone who was in need.  It was also normal for him to come home and say someone had just had a baby and did not have anything so he gave them a couple hundred dollars.  He once donated a van to some grandparents who all of a sudden had to raise all their grandkids and could not fit all of them in a normal size van and they had no money.  At Christmas he always made my list extra long because he did not want to see any kids go without presents.  He did a lot of charity work including being an auctioneer.

   Scott got moved around a lot when he was a kid (at least once a year).  Instead of getting angry and resentful he became appreciative and hardworking.  It also made him work harder so that would never happen to our daughters.  Unfortunately we are now getting divorced, but he is still there if I need anything at all.  The last few years have been extremely hard for Scott because he lost the two most important male figures in his life and when one of them died, we found out he had taken our home away from us and our kids.  It has also been incredibly hard because Scott feels so bad and embarrassed about what he has done.  I truly believe he was afraid he was not going to be able to provide for his family and employees who all counted on him.  Even after all this, instead of being angry and sad, he is still trying to help people and be there for me and our kids.

   All of these things I have said about him are just facts and I could keep going all day with things he has done for people.  I am not embellishing anything because I don't need to.

   The embarrassment and shame he has felt about buying the fish has taken a huge toll on him.  I am proud of him that he is teaching our kids that when you do something wrong you have to own up to it and accept your punishment.

I hope you can find it in your heart to be lenient with him because he is such a giving caring man.  Our 11 year old, Serenity, has some learning disabilities and sensory issues and we are still supporting our older 2 daughters (Vicky and Sasha) and our granddaughter Hope.  We have lost our home and are trying to find a new normal with that and the divorce and losing my grandma recently.  I can't do all this without financial help and support from Scott.  2 people who have passed away, my step dad and my grandma, they left me a little bit of money and it is all I have for me and my kids.  I will use it to help Scott with whatever fine he gets because he is always helping others and now he needs someone to help him.  I am just begging you please to keep it as low as possible and no jail time if at all possible!  I can't support all our kids on my own and I need him to be working.  We have lost 3 people and our amazing 3 legged dog Buddy, our home and our marriage in the last 2 years.  Losing Scott to prison will make our lives even harder!  He is horribly guilt ridden by what he has done and because this case has gone on for so long, it has been torture for him waiting for an outcome.  This is absolutely a case of someone doing something wrong one time and never again.   He is such a great compassionate man and fortunately that will never change and that is why I will always support him and love him no matter what.

Sincerely

Keri Kinley

EXHIBIT B

The Honorable Lauren King
United States Courthouse
700 Stewart Street, Suite 15134
Seattle, WA 98101-9906

November 29,2022

Dear Judge King,

This is a letter for my dad Scott Kinley.  I just want to say a few words about him.  He has been there for me since I was 12 years old.  I was in a rough spot in life and Scott in a heart-beat took me and my sister in.  It feels like a life time that he has been my dad.  He has been there when I needed to learn how to drive and when I was crying about boys.  He worked hard every night so he could provide for my mom and us 3 kids.  He has given me everything in life that I needed to survive, advice, love and anything I ever wanted under the sun and he worked so many hours so I could have it.  He reminded me everyday that he loves me and has become an amazing grandpa to my 2 year old daughter and hearing your daughter is pregnant is not something you want to hear from your young daughter but when I told my dad he knew the next steps to take and was always there when I called.  He worked long hours and never stopped working for his family.  All he ever wants to do is work for his family because money and material things don't matter to my dad.  All that does matter is that his family is fed and clothed and we are happy.  I could sit here and tell stories of how great my dad is and they would all be amazing things he has done for me and others.

   The only material things my dad likes to own is a comfortable bed to watch football in because that is the only time he takes for himself to relax.  He is the hardest working, most caring and loving dad anyone could ask for.  I can't thank him enough for being my dad and I just wanted to say a few great words about him because I would not be the woman I am today with out him teaching me all I know and have learned about basic life skills.  Like how to do your taxes and drive a car and run a company.  I look up to my dad more than anyone because he seems like he always has his head on straight and I don't know what I would do without him.

Sincerely,


Victoria Lane

EXHIBIT C

The Honorable Lauren King

United States Courthouse

700 Stewart Street, Suite 15134

Seattle, WA 98101-9906

November 29,2022

Dear Judge King,

Scott Kinley is my foster father.  He is a genuine human being who's shown more
courage and compassion than any man in my 20 years of life.  Scott may not have
given me life but he has definitely made my life so much better.  He has always
shown me what a good role model should look like and that is one who is always
respectful, honest and most of all someone who is dedicated to his family which is
super important for me.  He has taught me to set goals, strive for greatness and be
the best I can be for me and no one else.  I once heard dads teach us lots of things
but the real lesson is always love and he has done just that.

Thank you,

Sasha Lane

*Sasha Lane*

# EXHIBIT D

2732 Sche'lang'en Way #B
Bellingham, WA 98226
360-920-3888

August 26, 2022

To Whom It May Concern:

This letter is to acknowledge that Scott Kinley has been an active supporter of Schelangen Village which is a HUD Best Practice site for families in recovery. Schelangen Village, located on the Lummi Reservation, hosts 46 low-income families who have been reunited with their children and seek a new beginning.

The Village was opened in 2017 and Scott has enthusiastically supported the program through numerous gifts and donations. He provided toys for the children's room, clothing for our community clothing closet, salmon for community canning efforts, and even tickets to a Mariner's baseball game.

His support has been timely and without hesitation. His primary question for me has been, "How can I help the families?" And then filling a specific need. His generosity and support have been an encouragement to the Village staff and the residents who are learning to create community.

Personally, I cannot think of a more generous man who sincerely thinks of others and shares accordingly.

Sincerely,

John Plummer, PhD
Psychologist PY60213375
Imaginative Solutions LLC

EXHIBIT E



# LUMMI INDIAN BUSINESS COUNCIL

2830 KWINA RD • BELLINGHAM, WASHINGTON 98226-9198 • (360) 384-2366 ♦ Fax (360)384-2342

DEPARTMENT: *COMMUNITY SERVICES*

June 5, 2019

Scott Kinley, owner of Native American Fisheries has donated salmon to the Lummi Food Bank every year. Scott Kinley has owned Native American Fisheries since 2013. It is not uncommon for Scott to donate anywhere from 500 tp 3,000 pounds on a moments notice and we sincerely appreciate this gesture.

*Elaine Lane*

Elaine Lane, Community Services Program Manager

# EXHIBIT F

# LUMMI INDIAN BUSINESS COUNCIL
### 2665 KWINA ROAD  BELLINGHAM, WASHINGTON  98226 (360) 312-2000

DEPARTMENT_____  DIRECT NO. _____

To whom it may concern.

Lummi Nation is a small community I have known Scott Kinley for most of his life. Scott told me about his situation with the Federal Government and the selling of the fish soon after it happened. While I do not condone what Scott has done. I do know that this has bothered Scott for a couple of years while this has been going on. I do know that Scott has done a lot of charitable work for our community including him and his wife stepping up and becoming foster parents to 3 of our Lummi Children. Scott and his wife fought to adopt one of those children.

Scott Owned and Operated Native American Fisheries from 2013 to 2019. Scott was always there for our fishermen working sometime up to 16 hours a day so that our fishermen had a place to sell their fish.
Scott bought all the fish the fishermen brought to him sometimes when he wasn't sure he would be able to sell them. Sometimes he wasn't able to sell them. Scott donated fish he could not sell to Our Lummi Food bank sometimes this amounted to hundreds to some years even thousands of pounds of fish. The fish business was not always a profitable business but Scott was always there for our fishermen.

I knew Scott had his auction business and so I asked him what he would charge to be a part of of Lummi Boys and Girls Club Charity Auction. Scott said there would be no fee. Scott was a part of our many hours through the years of planning and actually doing the Auction. Scott never asked for a dime.

If you have any more questions or need any more input, feel free to contact me at 360 815-2356 or email me at: hcagey@msn.com.

Sincerely,

Henry M. Cagey, Councilman
Lummi Indian Business Council
2665 Kwina Road
Bellingham, WA 98226

1

# EXHIBIT G



# Little Bear Creek

## "Yohomest Este Ne Selalexw"

### "TAKING CARE OF OUR ELDERS"

**Lummi Nation Senior Program**
**2400 Lummi View Drive –Bellingham, WA 98226**
**Phone: (360) 758-3500 Fax: (360) 758-3515**

December 6, 2022

To Whom It May Concern:

I am writing this letter in reference to Scott Kinley who brought us 850 lbs of Fresh King Salmon for our elders in 2018 to distribute.  This is to verify that the community and elders received and utilized the Salmon. Scott Kinley has in the past provide tradition food (salmon) for elders to consume.  Our elders always are thankful for traditional foods.  It is really appreciated.  If you have any question or concerns please feel free to contact me Connie Martin, Little Bear Creek Administrator at 360-758-3500. Thank you.

Sincerely,

Connie Martin
Little Bear Creek Administrator
Lummi Nation

# EXHIBIT H

1

2

3

4

5

6

7                        UNITED STATES DISTRICT COURT
                        WESTERN DISTRICT OF WASHINGTON
8                                  AT SEATTLE

9    UNITED STATES OF AMERICA,

10                          Plaintiff,           Case No. 22-CR-00145-LK

11          v.                                   DECLARATION OF SCOTT KINLEY

12   SCOTT KINLEY,

13                          Defendant.

14

15          I, Scott Kinley, make the following declaration:

16          1.      I am over the age of 18 and competent to testify

17          2.      On September 13, 2022, I pled guilty as charged, pursuant to a written Rule

18   11(c)(1)(B) Plea Agreement to violation of the Lacey Act--Illegal Sale of Fish Possessed in

19   Violation of Tribal Law, under 16 U.S.C. § 3372(a)(1) and 3373(d)(1)(B).

20          3.      From the beginning of this case, I have accepted complete responsibility for

21   selling salmon that I knew to be for subsistence purposes only.  I recognize that this is wrong

22   and in violation of the law.

23          4.      Prior to this offense, I had no criminal history.  I am extremely remorseful for

24   my actions, and particularly for the effect my poor choices will have on my family.

25   / / /

26          I declare under penalty of perjury that the foregoing is true and correct.

DECLARATION OF SCOTT KINLEY - 1
Case No. 22-CR-00145-LK

506221681.1

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1      EXECUTED this _23rd_ day of November, 2022, at Mesa, Arizona

2

3

4                                  SCOTT KINLEY

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DECLARATION OF SCOTT KINLEY - 2
Case No. 22-CR-00145-LK

K&L GATES LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WA  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

506221681.1