Hon. Lauren King

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>SCOTT KINLEY<br><br>    Defendant. | NO. CR22-145LJK<br><br>GOVERNMENT'S SENTENCING MEMORANDUM |

Defendant Scott Kinley comes before the Court having plead guilty to a felony violation of the Lacey Act. The admitted criminal conduct arose from Mr. Kinley's purchase, transport, and sale of approximately 7,158 pounds of illegally taken Chinook salmon. Mr. Kinley initially purchased the salmon from Yakama tribal members during a Columbia River fishery that was only open to tribal members for subsistence and ceremonial purposes. Despite have full knowledge of this limitation, Mr. Kinley engaged in multiple purchases over a several week period. He subsequently transported the fish to processors where the fish were packaged for commercial sale. A majority of the processed fish was sold in interstate commerce through Native American Fisheries, a wholesale business owned and operated by Mr. Kinley.

Government's Sentencing Memorandum - 1
*United States v KINLEY*, CR22-145LJK

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Based on a fair and reasonable application of the sentencing factors set forth in Title 18, United States Code, Section 3553(a), as discussed below, the government respectfully recommends the Court impose a custodial sentence of one month, to be followed by a two-year term of supervised release with a condition that the first two months of that term be subject to home confinement as directed by Probation, order restitution in the amount of $143,088.42 payable to the Columbia River Intertribal Fish Commission, and impose a mandatory fee of $100.

## I. BACKGROUND

**A.   Offense Conduct**

The parties agreed Statement of Facts found on pages 5 through 7 of their Plea Agreement includes the relevant facts for purposes of this proceeding and the government refers the Court to that discussion. Subject to review of Mr. Kinley's sentencing submission(s), the government does not anticipate offering any additional facts at the time of sentencing.

## II. ADVISORY GUIDELINES CALCULATION

The government concurs with the offense level computation reached by the Probation Office as articulated at paragraphs 22 through 35 of the Supplemental Presentence Investigation Report dated November 28, 2022. That computation tracks the parties' agreement with the exception of the enhancement for fair market value of the illegally trafficked salmon. The parties were unable to reach agreement on that value both for purposes of determining the appropriate enhancement level and assessing restitution. In this case, the government contends the value is the same for both purposes. The government's position regarding that value is discussed below in the restitution section. The following table summarizes the computation:

| | |
|---|---|
| Base Offense Level, USSG § 2Q2.1(a) | 6 |
| Enhancement for an offense committed for pecuniary gain or commercial purpose, or for an offense involving a pattern of similar violations, USSG § 2Q2.1(b)(2) | 2 |

Government's Sentencing Memorandum - 2
*United States v KINLEY*, CR22-145LJK

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

| Market value for the illegally trafficked wildlife exceeded $95,000 but was less than $150,000, pursuant to USSG §§ 2Q2.1(b)(3) and 2B1.1(b)(1)(F).[1] | 8 |
|---|---|
| Acceptance of Responsibility, USSG § 3E1.1 | (3) |
| **Total Offense Level** | **13** |

Assuming the Court concludes that Mr. Kinley qualifies for a downward adjustment for acceptance of responsibility, the total adjusted offense level would be 13 with a corresponding imprisonment range of 12 to 18 months.

### III.  RECOMMENDATION & JUSTIFICATION

**A.  Term of Imprisonment/Supervised Release**

For the reasons noted below, the government recommends imposition of a below Guidelines sentence of one month term of imprisonment to be followed by a two-year term of supervised release with the initial two months subject to home confinement as directed by Probation.

**1.  Nature and Circumstances of the Offense**

Mr. Kinley's illegal trafficking of thousands of pounds of protected salmon is representative of an alarming practice of enterprising profiteers exploiting widespread conservation efforts for personal gain. These practices, particularly when undertaken by commercial interests with full knowledge of those conservation efforts, strikes at the heart of multi-jurisdictional coordinated efforts to preserve iconic species. As a tribal member himself, Mr. Kinley was acutely aware of the millions, if not billions of dollars spent on salmon restoration efforts spanning decades. He was similarly aware of the hard fought victories of Pacific Northwest tribes to secure subsistence and ceremonial fishing opportunities to foster cultural and religious traditions.

As noted in the victim impact statement submitted to this Court on behalf of the Confederated Tribes and Bands of the Yakama Nation, Mr. Kinley's admitted illegal

---

[1] Application Note 4 to Section 2Q2.1 states: "When information is reasonably available, "market value" under subsection (b)(3)(A) shall be based on the fair-market retail price. Where the fair-market retail price is difficult to ascertain, the court may make a reasonable estimate using any reliable information, such as the reasonable replacement or restitution cost or the acquisition and preservation ... cost. . . ."

Government's Sentencing Memorandum - 3
*United States v KINLEY*, CR22-145LJK

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

trafficking activities directly contributed to closure of the relevant ceremonial and subsistence fisheries and the ultimate exceedance of the allowable catch limits. His successful pursuit of these prized salmon compromised the conservation efforts of tribal fisheries managers. While Mr. Kinley's conduct when viewed in isolation did not imperil the entire fishery, it cannot be ignored or minimized in the context of a concerted conservation effort.

The poaching practices prosecuted in this case can only be characterized as a brazen effort to profit from buying and selling contraband. While the public safety implications associated with poached salmon does not compare to those more commonly considered in federal prosecutions, the long-term impact of undermining collective efforts to protect salmon and the tremendous investment in those resources warrants serious consideration when assessing the appropriate criminal sanctions.

Finally, the nature and circumstances associated with violations of fisheries regulations developed and implemented to protect iconic species is best captured by the victim impact statement submitted to the court on behalf of the Confederated Tribes and Bands of the Yakama Nation.[2] As referenced in the statement, the plight of protected salmon is no different from other threatened species. An essential component of conservation efforts is effective law enforcement that results in detecting, prosecuting, and sanctioning those seeking to profit from illegal trafficking. This case is an example of how this component can work.

**B.      History and Characteristics of the Defendant**

Mr. Kinley owned and operated a seafood brokerage company when he purchased and subsequently sold the poached salmon. He was well versed in fisheries regulations. His actions were deliberate, calculated, and profit driven. He fully comprehended the commercial advantage he gained by obtaining a supply of highly priced salmon that was unavailable to his competitors.

---

[2] The government anticipates that an official with the Columbia River Intertribal Fish Commission will be submitting a victim impact statement in advance of the scheduled sentencing hearing.

Government's Sentencing Memorandum - 4
*United States v KINLEY*, CR22-145LJK

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

The government readily recognizes Mr. Kinley's otherwise law abiding history. By all accounts, he has made numerous positive contributions to his community. His illegal trafficking activity suggests he was able to compartmentalize his behavior, perhaps rationalizing his pursuit of ill-gotten profit as necessary to remain competitive in the industry. Regardless of the rationale, he made a knowing decision to undertake conduct he knew was both illegal and contrary to the conservation interests that were implemented in large part to preserve the historic role of salmon in the cultural and religious practices of all Pacific Northwest tribes, including his own.

C.     **Affording Adequate Deterrence**

Illegal fish and wildlife trafficking undertaken for commercial gain is a serious problem. Federal, state, and tribal authorities with jurisdiction over the Columbia River and associated fisheries have enacted a network of statutory prohibitions, rules, and regulations intended to protect, preserve, and enhance those fisheries. The utility of that network, however, can only be measured by the effectiveness with which those prohibitions, rules, and regulations are applied to identify, investigate, and prosecute those who engage in illegal conduct. There are limited law enforcement resources available to address illegal trafficking. Consequently, it is important that those who are prosecuted receive a sentence that reflects the severity of the problem and their involvement in the trade. Those who weigh the likelihood of detection against the proven pecuniary gain associated with acquiring and selling poached salmon – particularly in competitive commercial markets – need to understand that criminal charges will be sought, and appropriately severe sentences will be imposed.  Prosecution without punishment would tip the balance in favor of continued trafficking with the predictable result of threatening diminishing resources.

The government cannot, and will not, argue that Mr. Kinley's trafficking activities and those of his associates will lead to the extinction of any species. While the scope of the admitted conduct is dwarfed by the regional restoration efforts, this prosecution communicates that the United States honors its obligation to prosecute and punish those found to violate the law. The message will only be heard, however, if the sentence is

Government's Sentencing Memorandum - 5
*United States v KINLEY*, CR22-145LJK

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

perceived as sufficiently punitive. Imposition of a straight probationary term would send a very different message. It would communicate a message of tolerance, suggesting that detection and prosecution may simply be a cost of business and a tolerable risk.

## IV.  RESTITUTION

The singular disputed legal issue before the Court is assessing the loss, and related restitution, attributable to Mr. Kinley's criminal conduct. Resolving this issue requires an understanding of how courts have addressed both loss and restitution in similar cases involving illegal fish and wildlife trafficking.

### A.  Victim Restitution Statutes

Victim restitution is the means by which victims of criminal conduct are made whole from losses suffered due to a defendant's unlawful actions. Once convicted of a federal offense, the government can request, or the parties can agree, that the court compensate victims for the losses caused by the defendant. In this case, the parties agreed that Mr. Kinley will pay restitution to the Columbia River Intertribal Fish Commission "in the amount of all losses, within the meaning of 18 U.S.C. § 3663 and 3664, resulting from the [admitted criminal conduct]." Dkt. 6, p. 9 (Restitution).[3]

Both the Victim and Witness Protection Act and the Mandatory Victim Restitution Act define "victim" as a person directly and proximately harmed as a result of the criminal conduct. 18 U.S.C. § 3663(a)(2). Courts have broadly interpreted the term person to include federal, state, and local governments, their agencies, as well as foreign nations. *United States v. Gibbens*, 25 F.3d 28, 32 (1st Cir. 1994)(governments); *United States v. Bengis*, 631 F.3d 33, 41 (2d Cir. 2011)(foreign nations).

Determining the amount of restitution in this case lies withing the Court's discretion. The scope of that discretion has been described as a broad one, merely requiring that the victim incur harm to some interest. *See, e.g., United States v. Oceanpro Indus. Ltd.*, 674 F.3d 323, 331 (4th Cir. 2012)(harm to a "legitimate and substantial

---

[3] Section 3663(a)(3) authorizes courts to "order restitution in any criminal case to the extent agreed to by the parties in a plea agreement. 18 U.S.C. § 3663(a)(3).

Government's Sentencing Memorandum - 6
*United States v KINLEY*, CR22-145LJK

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

interest is sufficient for VWPA restitution). A victim need not have suffered harm to a proprietary interest. *Id.* Similarly, there is not requirement that a victim suffer a pecuniary loss.

B.   **Restitution for Damage to Interests in Fish and Wildlife**

Courts generally agree that sovereigns, including states, foreign nations, and by extension tribal entities, are appropriately defined as victims of criminal conduct involving fish and wildlife trafficking. Two circuit court decisions, *United States v. Bengis*, 631 F.3d 33 (2nd Cir. 2011), affirmed following remand at 783 F.3d 407 (2nd Cir. 2015), and *United States v. Oceanpro Industries Ltd.*, 674 F.3d 323 (4th Cir. 2021) addressed both the statutory authority underlying awards of restitution, and more importantly for this case, determining the restitution amount, where the conduct involved poached fish. Both provide a rational and principled basis for adopting the government's position that Mr. Kinley be ordered to pay $143,088.42 in restitution to CRITFC.

The circuit court in *Bengis* confronted the issue of defining South Africa's interest in poached lobster for purposes of determining whether restitution was appropriate, and if so, the amount of that restitution. The defendant in *Bengis* previously plead guilty to violating the Lacey Act after being caught trafficking in lobsters harvested in violation of South African law. In reversing the district court, the circuit found that under South African law, illegally harvested lobsters were property of South Africa because "the South African government [was] authorized to seize illegally harvested lobsters, sell them, and retain the proceeds" of the sale. *Bengis*, 631 F.3d. at 39. It further reasoned that because the lobsters were harvested in violation of South African law, "the moment a fisherman pull[ed] an illegally harvested lobster out of the sea, a property interest to seize that lobster … vested in the government of South Africa. *Id.* Having been deprived of the opportunity to seize and sell the illegally harvested lobsters, South African authorities were deprived revenue, namely the sale proceeds, to which it was entitled. *Id.*

The rationale applied in *Bengis* should be adopted in this case. Mr. Kinley has plead guilty to trafficking in Chinook salmon that he knew had been taken in violation of tribal law. His conduct was initially undetected, allowing him sufficient time to transport,

Government's Sentencing Memorandum - 7
*United States v KINLEY*, CR22-145LJK

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

process, and sell the fish in the interstate commercial market. Tribal authorities, operating collectively under CRITFC, were denied the opportunity to seize and sell the illegally harvested salmon. They were deprived the sale proceeds to which they were entitled.

Similarly, the court in *Oceanpro* was tasked with determining whether Maryland and Virginia held a sufficient interest in poached striped bass to confer victim status for restitution purposes. Oceanpro, much like Mr. Kinley's business, was a commercial seafood wholesaler that was convicted of violating the Lacey Act after purchasing, processing, and distributing illegally harvested fish. 674 F.3d at 326-27. The circuit court affirmed a district court order that Oceanpro pay $300,000 in restitution to the states under both the MVRA and the VWPA. *Id.* Citing *Bengis*, the court reasoned that "[j]ust as South African law authorized the seizure and sale of the illegally harvested lobsters, Maryland and Virginia law authorize[d] the States' seizure and sale of illegally harvested striped bass." 674 F.3d at 332. The court further wrote that Maryland and Virginia "surely did possess a legitimate and substantial interest in protecting the fish in their waters as part of the natural resources of the State and its fishing industries." 674 F.3d at 331. It continued, writing that the defendants "undoubtedly directly and proximately harmed" the States' interest by poaching the fish. *Id.*

Taken together, the lesson from *Bengis* and *Oceanpro* is clear. A sovereign's ability to seize and sell poached fish presents an economic harm which entitles the sovereign to restitution for lost revenue.[4]

CRITFC was established to protect and enhance Columbia River fisheries resources for the benefit of its four tribal members. Working collaboratively with tribal representatives, CRITFC employs enforcement tools to include using the tribes seize-and-sale practices to redress harm to their sovereign interests. Employing those same

---

[4] See also, *United States v. Ross*, 2012 WL 4848876 (D.SD)(The government entitled to restitution under the VWPA because it had a legitimate and substantial interest in preserving and protecting hawks in its airspace as part of its stewardship of the public's natural resources. This interest was directly and proximately harmed by virtue of the defendant's illegal take of the hawks.).

Government's Sentencing Memorandum - 8
*United States v KINLEY*, CR22-145LJK

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

seize-and-sale practices to guide this court in assessing the appropriate measure of restitution is rational, principled, and legally supported.

### C.     Disgorgement of Profits Fails to Address the Restorative Purpose of Restitution

Mr. Kinley contends that restitution be measured by the profit, or ill-gotten gain, realized by him as a result of his illegal conduct. This contention misconstrues the true purpose of restitution.

### D.     Calculating Restitution

The parties' Plea Agreement includes the following on page 7:

> "The parties agree that the total weight of the unlawfully taken spring run Chinook Salmon purchased, transported, and sold by Scott Kinley between May 18, 2018, and May 28, 2018, was approximately 7,158 pounds."

Dkt. 6, p. 7.

Having agreed to the weight of the poached salmon, the issue under the Victim Witness Protection Act becomes defining the fair market retail value. 18 U.S.C. § 3663(b)(1)(B). In this case, that value is easily ascertainable based on Mr. Kinley's actual sales. The sales referenced in subparagraphs (i) and (ii) of the agreed facts were made to a retail seafood market in the Seattle metropolitan area. Collectively, Mr. Kinley was paid $7,735 for 658 pounds of Columbia River Chinook Salmon. The per pound price realized by Mr. Kinley represents the wholesale price. The retail price charged by the seafood market was $19.99. Applying this price to the agreed collective poundage of 7,158 results in a total retail value of $143,088.42.

As discussed above, the holdings in *Bengis* and *Oceanpro* provide this Court a rational, principled, and legally sufficient basis for imposing a restitution obligation of $143,088.42. The government respectfully requests that restitution payments be directed to the Columbia River Intertribal Fish Commission (CRITFC) to fund fisheries management projects intended to protect, preserve, and restore the impacted fisheries. At the request of the government, CRITFC officials are drafting a list summarizing potential projects to which the restitution funds would be applied. The list will be submitted to the Court in advance of the sentencing hearing.

Government's Sentencing Memorandum - 9
*United States v KINLEY*, CR22-145LJK

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## V. CONCLUSION

For the reasons set forth above, the government respectfully recommends the Court impose a custodial sentence of one month, to be followed by a two-year term of supervised release with the first two months subject to home detention, an order of restitution in the amount of $143,088.42, and a mandatory special assessment of $100.

DATED this 7th day of December 2022.

Respectfully submitted,

NICHOLAS W. BROWN
United States Attorney

*s/ James D. Oesterle*
JAMES D. OESTERLE
Assistant United States Attorney
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Phone: 206-553-5040
Email: jim.oesterle@usdoj.gov

Government's Sentencing Memorandum - 10
*United States v KINLEY*, CR22-145LJK

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970